## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **TORUS VENTURES LLC,** | **Civil Action No: 2:24-cv-00552-JRG** |
| **Plaintiff,** | **PATENT CASE** |
| **v.** | **JURY TRIAL DEMANDED** |
| **CAWLEY PARTNERS, LLC,** | **LEAD CASE** |
| **Defendant.** | |
| **TORUS VENTURES LLC,** | **Civil Action No: 2:24-cv-00570-JRG** |
| **Plaintiff,** | **PATENT CASE** |
| **v.** | **JURY TRIAL DEMANDED** |
| **DALLAS CAPITAL BANK, N.A.,** | **MEMBER CASE** |
| **Defendant.** | |

### DEFENDANT DALLAS CAPITAL BANK, N.A.'S RULE 12(b)(6)
### MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

III.  STATEMENT OF THE ISSUE ...................................................................................... 2

IV.   STATEMENT OF FACTS ............................................................................................. 2

V.    LEGAL STANDARD ..................................................................................................... 4

      A.    This Case Should Be Disposed of on the Pleadings ................................................ 4

      B.    The Law of 35 U.S.C. § 101 .................................................................................. 5

VI.   ARGUMENT .................................................................................................................. 6

      A.    Claim 1 of the '844 Patent Is Representative of All Claims.................................... 6

      B.    *Alice* Step One: Claim 1 of the '844 Patent Is Directed to the Abstract Idea of
           Encrypting Data That Has Already Been Encrypted. ........................................... 8

      C.    *Alice* Step Two: Claim 1 Contains No Inventive Concept. ................................. 12

      D.    There Are No Claim Construction or Factual Disputes Preventing the Court From
           Ruling on This Issue at the Rule 12 Stage .......................................................... 15

VII.  CONCLUSION .............................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
134 S. Ct. 2347 (2014) ...................................................................................... *passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC,*
967 F.3d 1285 (Fed. Cir. 2020) ...............................................................................13

*Ancora Technologies, Inc. v. HTC America, Inc.,*
908 F.3d 1343 (Fed. Cir. 2018) ...............................................................................11

*Apple, Inc. v. Ameranth, Inc.,*
842 F.3d 1229 (Fed. Cir. 2016) .................................................................................7

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................................................4

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,*
687 F.3d 1266 (Fed. Cir. 2012) ...........................................................................5, 14

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018) ...........................................................................8, 16

*Bilski v. Kappos,*
561 U.S. 593 (2010) ...........................................................................................5, 6, 8

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.,*
778 F. App'x 882 (Fed. Cir. 2019) ..........................................................................10

*BSG Tech LLC v. Buyseasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018) .........................................................................12, 14

*buySAFE, Inc. v. Google, Inc.,*
765 F.3d 1350 (Fed. Cir. 2014) ...............................................................................14

*Checksum Ventures, LLC v. Dell Inc.,*
412 F. Supp. 3d 906 (N.D. Ill. 2019) ......................................................................11

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
859 F.3d 1352 (Fed. Cir. 2017) .................................................................................6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
776 F.3d 1343 (Fed. Cir. 2014) .......................................................................6, 8, 14

*Cuvillier v. Sullivan*,
   503 F.3d 397 (5th Cir. 2007) ..................................................................................4, 5

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011)...................................................................................6

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980)....................................................................................................5

*Diamond v. Diehr*,
   450 U.S. 175 (1981)....................................................................................................6

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
   815 F. App'x 529 (Fed. Cir. 2020) .....................................................................10, 17

*Epic IP LLC v. Backblaze, Inc.*,
   351 F. Supp. 3d 733 (D. Del. 2018)............................................................................1

*First-Class Monitoring, LLC v. Ups of Am., Inc.*,
   389 F. Supp. 3d 456 (E.D. Tex. 2019) ......................................................................17

*Fort Props., Inc. v. Am. Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012)...................................................................................6

*Intellectual Ventures I LLC v. Capital One Bank U.S.A.*,
   792 F.3d 1363 (Fed. Cir. 2015).................................................................................14

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016).................................................................................13

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015).................................................................................12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012).................................................................................................6

*Parker v. Flook*,
   437 U.S. 584 (1978).....................................................................................................6

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
   2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) .......................8

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
   No. 2:18-cv-00007-JRG, 2019 WL 1317286 (E.D. Tex. Mar. 21, 2019).................7

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)...................................................................................8

*Sensormatic Elecs., LLC v. Wyze Labs, Inc.*,
    No. 2020-2320, 2021 WL 2944838 (Fed. Cir. July 14, 2021)...................................................8

*Symbology Innovations, LLC v. Dexcom, Inc.*,
    No. 2:23-CV-00473-JRG, 2024 WL 3543409 (E.D. Tex. July 25, 2024)..............................13

*TecSec, Inc. v. Adobe Inc.*,
    978 F.3d 1278 (Fed. Cir. 2020)......................................................................................1, 9, 10

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017).............................................................................................12

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)........................................................5, 9

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) .............................................................................................10

*Yu v. Apple Inc.*,
    1 F.4th 1040 (Fed. Cir. 2021) ...............................................................................................12

**Statutes**

35 U.S.C. § 101........................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12...............................................................................................................1, 2, 4

## I.    INTRODUCTION

U.S. Patent No. 7,203,844 purports to patent the idea of encrypting data that has already been encrypted. That idea is an abstract concept ineligible for patent protection. The claims of the '844 Patent are directed solely to this abstract concept and do not claim any inventive concept sufficient to confer patent eligibility on the claimed abstract idea.

Unlike the claims at issue in *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1295 (Fed. Cir. 2020), which were found directed to ***specific***, patent-eligible improvements beyond merely using multiple levels of encryption, the specification of the '844 Patent boasts the claims' lack of specificity: "The digital nature of these data is all that is important to the protocol." '844 Patent at 4:27-29. The '844 Patent's applicant did not claim an unconventional system to solve a specific problem or a particular mechanism for improving computing systems. As Judge Bryson, sitting by designation in the District of Delaware, noted, claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018). The '844 Patent simply claims an abstract concept, not a specific implementation of that concept. Its claims are therefore invalid for failure to claim patent-eligible subject matter.

Resolving this eligibility issue does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating an invalid patent, Dallas Capital Bank ("Defendant") requests that the Court dismiss the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On July 22, 2024, Plaintiff Torus Ventures filed its Complaint for patent infringement, accusing Defendant of infringing the '844 Patent. Specifically, Torus Ventures accuses

Defendant of infringing at least Claim 1 of the '844 Patent using the TLS 1.3 security protocol on Defendant's website. *See* Compl., Ex. 2. To date, Torus Ventures has filed over 140 cases.

On February 14, 2025, Defendant filed a Motion for Judgment on the Pleadings, arguing that the claims of the '844 Patent are directed to an abstract idea and do not include an inventive concept beyond that idea. ECF No. 42. Rather than respond to the Motion, Torus Ventures filed an Amended Complaint on March 14, 2025. ECF No. 50.

## III.    STATEMENT OF THE ISSUE

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept that amounts to significantly more than the abstract idea. The claims of the '844 Patent are directed to the abstract idea of encrypting data that has already been encrypted and do not include an inventive concept beyond that idea. Should the Court therefore dismiss Torus Ventures' claims pursuant to Rule 12(b)(6)?

## IV.    STATEMENT OF FACTS

The '844 Patent relates to "the protection of digital data through the use of encryption." '844 Patent at 1:17–18. The '844 Patent explains that the "state of the public art in digital security algorithms can be readily gleaned through a perusal of online information or via the various publications and patents which examine this subject." *Id.* at 1:58–2:3.

More specifically, the '844 Patent purports to solve a problem of having security protocols that are "independent of the actual mechanism for encrypting or decrypting the actual data" and instead, make "distinctions between the various types of bit streams to be protected." *Id.* at 2:4-40. The '844 Patent purports to solve this problem with "[s]ystems and methods for security protocols, which may utilize a variety of encryption techniques" whereby "[t]he digital nature of these data is all that is important to the protocol." *Id.* at 2:54-56, 4:27–29. "Since these protocols are based on the premise that all digital bit streams are equal, it can even be used in a recursive fashion in

2

order to control access to updates to the protocol itself." *Id.* at 4:18-21. In other words, the claimed

protocol is boundless:

> [T]he protocol makes no distinction between types of digital data, whether the data be media streams to be protected, the executable code required to play those streams, the encrypted executable code required to play those streams, the executable code required to decrypt the encrypted code required to play those streams, the keys to be used along with the decryption code, etc., etc.

*Id.* at 4:21-27. This unbounded scope allows the invention to "support a number of business

models, including Time-limited Rental, Pay-per-view, Multiple Versioning, Machine-dependent

License Revocation and Permanent Transfer of Ownership from one user to another." *Id.* at 4:44-

48.

This recursive encryption is recited as follows in representative claim 1:

1. A method for a recursive security protocol for protecting digital content, comprising:

encrypting a bitstream with a first encryption algorithm;

associating a first decryption algorithm with the encrypted bit stream;

encrypting both the encrypted bit stream and the first decryption algorithm with a second encryption algorithm to yield a second bit stream;

associating a second decryption algorithm with the second bit stream.

*Id.* at 29:16-25. The remaining two independent claims (claims 19 and 37) merely recite a system

or computer storage device capable of performing the steps of the method recited in claim 1,

respectively.

The '844 Patent's recursive encryption is carried out using conventional components. The

applicants made this clear through their own language in the specification. For example, the

specification makes the following concessions about the use of conventional technologies:

- "On a fundamental level, all binary digital data can be reduced to *a stream of 1's and 0's (a bitstream)*, which can be stored and retrieved in a manner which is

3

completely independent of the intended purpose or interpretation of that bitstream." *Id.* at 2:31–34 (emphasis added).

- "Systems and methods for security protocols, ***which may utilize a variety of encryption techniques*** to better protect digital content are disclosed." *Id.* at 2:54–56 (emphasis added).

- "One of the methods by which these primary characteristics ***can be implemented in an otherwise general purpose computing system*** is discussed in a following section." *Id.* at 5:35-38 (emphasis added).

- "This is a well-understood problem and is the basis of ***a large number of industry-standard encryption algorithms***." *Id.* at 5:57-59 (emphasis added).

- "Each registered developer 520 will have a public key/private key pair which is used to authenticate any messages which they use to communicate with the licensing authority's server as well as to create ***signed Message Authentication Codes or MACs (typically referred to as digital signatures)*** which can be used to authenticate any published code blockor other bitstream." *Id.* at 9:56-62 (emphasis added).

- "At that point, an encrypted version of the temporary key list data structure can be safely written out to memory (or stored in some other, more permanent location, such as ***on-board NVRAM, Flash ROM or even out to a backup file on some hard disk*** 750." *Id.* at 21:39–43 (emphasis added).

Accordingly, the alleged invention requires only use of generic devices and technologies used for their conventional purposes.

## V.    LEGAL STANDARD

### A.    This Case Should Be Disposed of on the Pleadings

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (tenet that allegations are taken as true on a motion to

4

dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### B.    The Law of 35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the

claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Alice*, 134 S. Ct. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity— such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

## VI.    ARGUMENT

### A.    Claim 1 of the '844 Patent Is Representative of All Claims.

The Court should treat claim 1 of the '844 Patent as representative of all claims of the '844 Patent for purposes of the § 101 analysis. Where claims are "substantially similar and linked to the same" ineligible concept, it is proper to treat a single claim as representative. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (internal quotation marks omitted); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776

6

F.3d 1343, 1348 (Fed. Cir. 2014). Torus Ventures itself treats claim 1 of the '844 Patent as exemplary in its claim chart attached to the First Amended Complaint. *See* First Am. Compl., Ex. 2. The '844 Patent has 54 claims, three of which are independent. Each of the claims of the '844 Patent are substantially similar.

Independent claim 19 merely describes a system for implementing the method described in claim 1, and independent claim 37 describes a computer storage device that has executable instructions to perform the method described in claim 1. '844 Patent, cl. 19 (system), cl. 37 ("computer storage device").

The dependent claims add only pre- or post-solution activity and do not change the analysis under § 101:

| Pre- or Post-Solution Activity | Claims |
|---|---|
| Decrypting the data using a key | 2-4, 20-22, 38-40 |
| The key is in a key data structure that can be encrypted | 5-10, 23-28, 41-46 |
| The encryption algorithm is a symmetric/asymmetric key system | 11, 29, 47 |
| Using digital signatures | 12-13, 30-31, 48-49 |
| Verifying the data | 14-18, 32-36, 50-54 |

None of these limitations causes any dependent claim to be materially different from representative Claim 1, as none of the limitations is directed to any specialized components or organization of limitations giving rise to an inventive concept. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016) ("[A]ppending preexisting practice[s] to [] independent claims does not make them patentable."). Like the claim limitations in the representative claim 1 of the '844 Patent, the additional limitations do not alter the § 101 analysis. Claim 1 is thus representative. *See PPS Data, LLC v. Jack Henry & Assocs., Inc.*, No. 2:18-cv-00007-JRG, 2019 WL 1317286, at *5 (E.D.

Tex. Mar. 21, 2019) (articulating that defendants first bear the burden of demonstrating a claim is representative, which then shifts to the plaintiff to identify a difference material to the § 101 analysis); *see also Content Extraction*, 776 F.3d at 1348; *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017). Thus, the Court may treat claim 1 of the '844 Patent as representative in resolving the § 101 inquiry. *See Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, No. 2020-2320, 2021 WL 2944838 (Fed. Cir. July 14, 2021) (affirming district court's invalidation of 25 asserted claims, treating one claim as representative); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative" where there is no "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim.").

### B.    *Alice* Step One: Claim 1 of the '844 Patent Is Directed to the Abstract Idea of Encrypting Data That Has Already Been Encrypted.

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the '844 Patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of encrypting data multiple times. *See Alice*, 134 S. Ct. at 2356–59; *Bilski*, 561 U.S. at 611.

In assessing whether claim 1 is directed to an abstract idea, the Court begins by analyzing the "focus" of the claim, *i.e.*, its "character as a whole," to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). All claim 1 of the '844 Patent covers is the use of a conventional encryption to encrypt data that has already been encrypted:

| Claim Language | Claimed Idea |
|---|---|
| 1. A method for a recursive security protocol for protecting digital content, comprising: | Protecting data |
| encrypting a bitstream with a first encryption algorithm; | Encrypting data |
| associating a first decryption algorithm with the encrypted bit stream; | Associating encrypted data with data for decryption |
| encrypting both the encrypted bit stream and the first decryption algorithm with a second encryption algorithm to yield a second bit stream; | Encrypting data |
| associating a second decryption algorithm with the second bit stream. | Associating encrypted data with data for decryption |

Claim 1 describes the most generic functional steps of a standard computer (*i.e.*, protecting, encrypting, and associating data). Such a broad concept is not patent eligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715.

The Federal Circuit's opinion in *TecSec* is instructive here. In *TecSec*, Adobe argued that the claims at issue were ineligible because they are directed to "the impermissibly abstract idea of managing access to objects using multiple levels of encryption." 978 F.3d at 1294. The Federal Circuit disagreed. Rejecting Adobe's characterization, the court found that the claims went "beyond managing access to objects using multiple levels of encryption." *Id.* Rather, the claims expressly required, in addition to multiple levels of encryption, "accessing an 'object-oriented key manager' and specified uses of a 'label' . . . ." *Id.* at 1295. These additional limitations led to the "conclu[sion] that the claims are directed to improving a basic function of a computer data-distribution network, namely, network security." *Id.* at 1296. Although the *TecSec* claims involved "multilevel security," this did "not negate the conclusion that the patent is aimed at solving a particular problem of multicasting computer networks." *Id.*

9

The claims of the '844 Patent, unlike those at issue in *TecSec*, do not recite anything **beyond** the abstract idea of multilevel encryption. Further unlike the *TecSec* claims, the claims of the '844 Patent lack any **specificity**. Indeed, the specification boasts the lack of specificity of the claimed invention:

> [T]he protocol makes no distinction between types of digital data, whether the data be media streams to be protected, the executable code required to play those streams, the encrypted executable code required to play those streams, the executable code required to decrypt the encrypted code required to play those streams, the keys to be used along with the decryption code, etc., etc.

*Id.* at 4:21-27. The specification continues that its invention "may utilize a variety of encryption techniques" (2:54-56), can be used with "any bit stream whatsoever" (4:49-54), and "is not hardware specific" (5:47-50).

Comparison to claims held patent-ineligible in other cases confirms that the '844 Patent is directed to an abstract idea. For example, in *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1351-53 (Fed. Cir. 2021), the Federal Circuit found claims abstract over assertions that the claims solve a problem using "encrypted authentication information." The court explained that the "claimed 'encrypted authentication information' here is merely a collection of conventional data combined in a conventional way that achieves only expected results." *Id.* at 1352.

Similarly, in *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 531-534 (Fed. Cir. 2020), the Federal Circuit found abstract claims directed generally to a method of "providing only as much authentication and encryption security as is required for a given user, a given path through the network [to a given information resource], and a given [information] resource." The court noted that "[n]othing in the claims—or the specification's definition of the claimed elements" provided a **specific** technique. *Id.* at 535; *see also Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 889 (Fed. Cir. 2019) (affirming a finding made on a motion to dismiss that claims directed to targeted marketing over the internet, including the transfer of encrypted

10

information, and tracking internet browsing were invalid under § 101, the court finding that the claims were not directed to an improvement in computer technology since "[n]one of these alleged improvements 'enables a computer ... to do things it could not do before'"); *Checksum Ventures, LLC v. Dell Inc.*, 412 F. Supp. 3d 906, 919 (N.D. Ill. 2019) ("Merely saying, 'encrypt it' is just an application of the abstract idea of encryption itself and is therefore patent ineligible.").

While Torus Ventures will certainly respond that the '844 Patent is somehow directed to a technological improvement, this case differs from the claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated, "Improving security—here, against a computer's unauthorized use of a program—can be a non-abstract computer-functionality improvement . . . done by a specific technique that departs from earlier approaches to solve a specific computer problem." *Id.* at 1348. The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of claim 1 of the '844 Patent. It does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement. As noted above, the specification boasts the claims' lack of specificity. *See, e.g.*, '844 Patent at 4:21-27.

Claim 1 also uses result-based functional language to describe its method in an abstract way. For example, claim 1 uses language like "encrypting" and "associating" without describing how those steps are carried out. Such claim language is a hallmark of a patent whose claims are

11

directed to an abstract idea. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (Claim 1 recites a method for routing information using result-based functional language. The claim requires the functional results of "converting," "routing," "controlling," "monitoring," and "accumulating records," but does not sufficiently describe how to achieve these results in a non-abstract way."). By only claiming the desired result—encrypting already encrypted data—without providing any specificity for doing so, claim 1 of the '844 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015); *Secured Mail*, 873 F.3d at 910–11. The '844 Patent claims are directed to an abstract idea.

### C.    *Alice* Step Two: Claim 1 Contains No Inventive Concept.

Claim 1 does not contain an inventive concept that amounts to significantly more than the abstract idea itself—something sufficient "to ***transform*** the claimed abstract idea into a patent-eligible invention." *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021) (emphasis added); *see also BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). There is no "inventive concept" where the claim recites "well-understood, routine, conventional activit[ies] previously known to the industry." *Alice*, 573 U.S. at 225.

Claim 1 lacks an inventive concept because it relies on conventional methods and routine operations already widely used. The '844 Patent's specification describes the use of generic components in carrying out the steps in claim 1. For example, the specification explains that the claimed "bit stream" can "be reduced to ***a stream of 1's and 0's*** . . . ." *Id.* at 2:31–34 (emphasis added). The specification also explains that the claimed encryption "***may utilize a variety of encryption techniques*** to better protect digital content . . . ." *Id.* at 2:54–56 (emphasis added). Additionally, the methods . . . ***can be implemented in an otherwise general purpose computing system*** . . . ." *Id.* at 5:35-38 (emphasis added). Finally, "an encrypted version of the temporary key

12

list data structure can be safely written out to memory (or stored in some other, more permanent location, such as **on-board NVRAM, Flash ROM or even out to a backup file on some hard disk** 750." *Id.* at 21:39–43 (emphasis added). In essence, the '844 Patent takes the abstract idea described above and applies it using generic computer components and conventional methods. The arranging of these conventional components does not amount to "significantly more" than the abstract idea itself. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1320 (Fed. Cir. 2016).

Considered either individually or as an ordered combination, claim 1 contains no inventive concept. Claim 1 describes (1) encrypting data; (2) associating that encrypted data with a means for decryption; (3) encrypting the already encrypted data with the means for decryption; and (4) associating the new encryption with a means for decryption. '844 Patent, cl. 1. These are well-known, routine functions of a computer. *See Symbology Innovations, LLC v. Dexcom, Inc.*, No. 2:23-CV-00473-JRG, 2024 WL 3543409, at *12 (E.D. Tex. July 25, 2024) ("Each of these limitations individually describe routine functions that have existed in computers long before these patents (and some which simply describe the act of communication itself). In combination, they describe a basic barcode scanner, something that the patent acknowledges was well-known at the time of the invention."). Once the routine limitations have been stripped away, all that is left is the steps of encrypting data that has already been encrypted—i.e., the abstract idea itself, which cannot confer the inventive concept. *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1299 (Fed. Cir. 2020) ("a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept required to cross the line into eligibility.") (internal quotations omitted).

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in claim 1 of the '844 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."); *Bancorp*, 687 F.3d at 1276–77. In addition, an "abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as [mobile services]." *Intellectual Ventures I LLC v. Capital One Bank U.S.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

The other claims of the '844 Patent include similar limitations regarding the abstract idea, but they do not include the specificity necessary to claim patent-eligible subject matter. They also do not include anything other than generic components and processes such that they fail to contain an inventive concept. Accordingly, the other claims suffer from the same flaws as claim 1 of the '844 Patent. These claims also do not contain any inventive concept amounting to "significantly more" than the abstract idea. They do not inject any unconventional computer components or techniques. The claims simply apply the same abstract concept of narrowing search results based on user input, and the Federal Circuit has been clear that the abstract idea itself cannot confer an inventive concept. *See BSG Tech*, 899 F.3d at 1290 ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

14

Because the claims of the '844 Patent are altogether devoid of any "inventive concept," they are patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359–60.

### D.  There Are No Claim Construction or Factual Disputes Preventing the Court From Ruling on This Issue at the Rule 12 Stage

The issue of the patent eligibility is ready for the Court's consideration because there are no factual or claim construction issues. There are no claim construction issues affecting the *Alice* analysis. To the extent Torus Ventures alleges that there are claim constructions that bear on the issue of eligibility, it is wrong. For example, Torus Ventures may argue that "bit stream" must be construed before conduction the eligibility analysis. Not so. Not only is there no construction that would save the claims from their ineligibility, the specification concedes that a bit stream can "be reduced to *a stream of 1's and 0's* . . . ." *Id.* at 2:31–34 (emphasis added). In other words, a bit stream is the most fundamental type of data—binary code.

Additionally, there are no factual disputes on this record. The '844 Patent does not assert any unconventional mechanism of implementing the claimed idea, and the First Amended Complaint does not allege *any* facts to support inventive concepts or unconventional use of known components to implement the concept. The differences between Torus Ventures' Original Complaint and First Amended Complaint are clear. Specifically, Torus Ventures added 13 new paragraphs in its First Amended Complaint (paragraphs 10-22), which attempt to overcome the claims' ineligibility. They do not. Largely, Torus Ventures quotes the specification in ways that highlight the claims' ineligibility. After describing the prior art in paragraphs 10-12, Torus Ventures alleges that the '844 Patent overcame the prior art by "providing systems and methods for security protocols, which *may utilize a variety of encryption techniques*" and recognizing that "on a fundamental level, *all binary digital data can be reduced to a stream of 1's and 0's (a*

*bitstream).*" First Am. Compl., ¶ 13 (emphasis added) (quoting '844 Patent at 2:31-36 and 2:54-56).

Next, Torus Ventures merely repeats the claim language from claim 1 (¶¶ 14, 21), touts the claims' novelty (¶¶ 15-16), and states that the claimed method was not previously performed by humans or capable of being performed in the human mind (¶ 22). In paragraphs 17-20, Torus Ventures highlights the claims' lack of specificity, alleging that "entirely new security and/or encryption algorithms can be added on top of existing systems," "the claimed invention treats all digital data uniformly," and the "recursive security protocol claimed in the '844 Patent was also more 'flexib[le]'." None of these allegations provide a factual dispute about the eligibility of the claims. Taking all of Torus Ventures' new allegations as true, the abstract, unspecific nature of the claims is amplified.

This case is markedly different from *Berkheimer* and the line of cases where factual issues have been found to exist in *Alice* Step Two. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The court added that "[t]he improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities . . . so we must analyze the asserted claims and determine whether they capture these improvements." *Id.* After finding that some claims "contain limitations directed to the arguably unconventional inventive concept described in the specification," the court held that there was a question of fact as to whether those claims perform "well-understood, routine, and conventional activities." *Id.* at 1370. It should be noted, however, that "[t]he *Berkheimer* [] cases do not stand for the proposition that a plaintiff can avoid dismissal simply by reciting in the

complaint that the invention at issue is novel and that the inventive concept resides in the abstract idea itself." *First-Class Monitoring, LLC v. Ups of Am., Inc.*, 389 F. Supp. 3d 456, 471 (E.D. Tex. 2019) (emphasis added). Furthermore, "[a]ny allegation about inventiveness, wholly divorced from the claims or the specification, does not defeat a motion to dismiss; only plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (internal quotations omitted).

Accordingly, Defendant's motion is ripe for the Court's consideration.

## VII.    CONCLUSION

For the reasons above, Defendant respectfully requests that the Court grant this motion and dismiss Torus Ventures' First Amended Complaint. Because leave to amend would be futile, Defendant requests dismissal with prejudice.

Dated: March 17, 2025                    Respectfully submitted,

                                         */s/ Lance E. Wyatt*
                                         J. Brian Vanderwoude
                                         Texas Bar No. 24047558
                                         **DORSEY & WHITNEY, LLP**
                                         200 Crescent Court, Suite 1600
                                         Dallas, Texas 75201
                                         (214) 981-9900 Phone
                                         (214) 981-9901 Facsimile
                                         vanderwoude.brian@dorsey.com

                                         Neil J. McNabnay
                                         Texas Bar No. 24002583
                                         mcnabnay@fr.com
                                         Lance E. Wyatt
                                         Texas Bar No. 24093397
                                         wyatt@fr.com
                                         Riley J. Green
                                         Texas Bar No. 24131352
                                         rgreen@fr.com
                                         **FISH & RICHARDSON P.C.**
                                         1717 Main Street, Suite 5000
                                         Dallas, TX 75201
                                         (214) 747-5070 – Telephone
                                         (214) 747-2091 – Facsimile

                                         **COUNSEL FOR DEFENDANT
                                         DALLAS CAPITAL BANK, N.A.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 17, 2025, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

                                         */s/ Lance E. Wyatt*
                                         Lance E. Wyatt

## CERTIFICATE OF COMPLIANCE WITH THE COURT'S
<u>**35 U.S.C. § 101 MOTION PRACTICE ORDER**</u>

**____**  The parties agree that prior claim construction is not needed to inform the Court's analysis as to patentability.

 X  The parties disagree on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

<i>/s/ Lance E. Wyatt</i><br>
Lance E. Wyatt

19