# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **TORUS VENTURES LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CAWLEY PARTNERS, LLC,**<br><br>Defendant. | Civil Action No: 2:24-cv-00552-JRG<br><br>PATENT CASE<br><br>JURY TRIAL DEMANDED<br><br>LEAD CASE |
| **TORUS VENTURES LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**DALLAS CAPITAL BANK, N.A.,**<br><br>Defendant. | Civil Action No: 2:24-cv-00570-JRG<br><br>PATENT CASE<br><br>JURY TRIAL DEMANDED<br><br>MEMBER CASE |

**DALLAS CAPITAL BANK, N.A.S REPLY IN SUPPORT OF ITS RULE 12(b)(6)
<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

Torus Ventures has filed over 145 lawsuits asserting claims of U.S. Patent No. 7,203,844. Not one of those lawsuits has reached a merits decision because Torus Ventures does not want to actually test the merits of its asserted claims. Many of these lawsuits have been dismissed in the early stages.

This time, Torus Ventures is attempting to delay the Court's determination of the claims' eligibility under Section 101. After taking many extensions to respond to Defendant's motions on this issue (originally filed two months ago), including filing an amended complaint, Torus Ventures is seeking delay by purporting to make up fact issues that prevents the Court from ruling on subject matter eligibility. Importantly, however, Torus Ventures has failed to explain how any fact issue would impact the Section 101 analysis. (*See* Dkt. 56 "Opp.," 6-7); *see, e.g.*, *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360- 61 (Fed. Cir. 2023) ("[T]he patentee must propose a specific claim construction or ***identify specific facts that need development and explain why those circumstances must be resolved*** before the scope of the claims can be understood for § 101 purposes.") (emphasis added). Because these manufactured issues do not affect that analysis, the claims are directed to ineligible subject matter and should be found invalid. This motion is thus ripe for the Court's consideration.

The asserted claims describe the concept of encrypting data more than once, which is an abstract idea ineligible for patenting. Moreover, neither the specification nor any claim identifies a specific way of implementing this concept. Instead, the specification boasts the non-specific nature of its claims:

> [T]he protocol makes no distinction between types of digital data, whether the data be media streams to be protected, the executable code required to play those streams, the encrypted executable code required to play those streams, the executable code required to decrypt the encrypted code required to play those streams, the keys to be used along with the decryption code, etc., etc.

'844 Patent at 4:21-27.

Even if the claims of the asserted patents capture any purported improvements, those improvements are to the abstract idea itself. The Federal Circuit has held that "[a]s a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."). That holding applies here.

The claims' recitation of non-specific limitations makes clear that the patentee intended to lay claim to any action whatsoever resulting in practice of the general abstract idea. Such claims are precisely the type of claims that courts have repeatedly found ineligible. When there is no plausible reading of a patent that would enable it to satisfy the threshold inquiry under § 101, an early Rule 12(b)(6) dismissal is appropriate.

To avoid waste of judicial and party resources further litigating invalid patents, Defendant Dallas Capital Bank requests the Court dismiss Torus Ventures' First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I. **THE ASSERTED CLAIMS ARE INVALID**

  A. **Claim 1 of the '844 Patent is representative.**

Torus Ventures does not argue that the Court may not treat claim 1 as representative. The Federal Circuit has explained that "Courts may treat a claim as representative in certain situations, such as if the patentee does not present ***any meaningful argument*** for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (emphasis added); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016). Not only did Torus

Ventures provide no *meaningful* argument, it provided *no argument* on the representative nature of claim 1. Claim 1 is thus representative.

### B. *Alice* Step One: The asserted claims are directed to an abstract idea.

The claims of the asserted patent are directed to an unpatentable, abstract idea because they claim no more than the "longstanding," "routine," and "conventional" concept of recursively encrypting data. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2356–59 (2014). None of Torus Ventures' arguments can overcome the abstract nature of its patent.

Torus Ventures first takes issue that Defendant characterized the abstract idea in its motion as both "encrypting data that has already been encrypted" and "multilevel encryption," as if these two characterizations are "varying." (*See* Opp. at 1, 8.) They are not. Indeed, when data that has already been encrypted is encrypted again it results in multilevel encryption. These characterizations are thus equivalent like the equivalent characterizations provided above: (1) encrypting data more than once or (2) recursively encrypting data.

Torus Ventures also argues that these characterizations "impermissibly oversimplify the '844 Patent's claims." (Opp. at 8.) Torus Ventures argues that these characterizations fail to capture that the claims also encrypt the means of decrypting the first encryption. This too, however, is abstract because it is simply encrypting additional data. In other words, the claims cover (1) the encryption of data and (2) encrypting that encrypted data *again* along with the means for decrypting that first encryption. As the '844 Patent describes, "The 'older' security system is 'subsumed' as a part of the newer security system (i.e., you never have to strip the old protection 'wrapper' away in order to add a new, potentially more secure, level of protection to the entire system)." '844 Patent at 4:35-39. At bottom, this is an abstract idea because it simply involves encrypting already encrypted data with additional data. As an offline analogue, this is like having a building that is guarded by a front door that can be unlocked with a physical key. If that security

method is compromised, the building owner may build a fence around the building, installing a new locking mechanism to open the fence, and once open, the physical key to unlock the building door is located under a doormat. That idea—recursive encryption—is to what the '844 Patent attempts to lay claim.

Torus Ventures then, as expected in Defendant's opening motion, tries to equate the claims of the '844 Patent to those in *TecSec*, arguing that claim 1 of the '844 Patent "goes beyond merely applying multilevel encryption." (Opp. at 9.) Again, Torus Ventures' only argument is that the second round of encryption includes encryption of both previously encrypted data and additional data (the decryption means). (*Id.*) This remains an abstract idea: recursively encrypting data, even if new data is added for the subsequent encryption. This is unlike the *TecSec* claims, which went "beyond managing access to objects using multiple levels of encryption," by expressly requiring "accessing an 'object-oriented key manager' and specified uses of a 'label' . . . ." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 129495 (Fed. Cir. 2020). The *TecSec* claims went far beyond the '844 Patent, which essentially claim the idea of "encrypt it again."

Torus Ventures' reliance on *Int'l Bus. Machines Corp. v. The Priceline Grp. Inc.*, No. 15-137-LPS-CJB, 2016 WL 626495 (D. Del. Feb. 16, 2016) is misplaced. Torus Ventures seemingly relies on *IBM* because the *IBM* claims recursively performed an action and were upheld at the Rule 12 stage. (*See* Opp. at 10.) The claims in *IBM* provided a ***specific*** method for preserving state on the Internet by "'recursively embedding' the state information in continuations, such as hypertext links, during a conversation." 2016 WL 626495, at *6. Prior methods of preserving state did not include embedding state information. *Id.* at *5. The court did not find that merely doing something recursively was sufficient to overcome a Section 101 challenge. The *IBM* claims provided a specific solution to overcome a technological problem. Here, the claims of the '844 Patent take a

4

well-known practice—encrypting data—and merely perform that well-known activity recursively. Recursively performing conventional activity is an abstract idea.

Next, in conclusory fashion, Torus Ventures does not meaningfully distinguish the other cases cited in Defendant's motion—*Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1351-53 (Fed. Cir. 2021), *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 531-534 (Fed. Cir. 2020), *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 889 (Fed. Cir. 2019). Each of these cases found that simply encrypting data is conventional activity and, without more, leaves claims in the realm of abstraction. Here, too, the claims recite nothing but the conventional activity of encrypting data, even if done more than once.

Torus Ventures also touts purported benefits from practicing the abstract idea recited in the asserted claims: improved security and efficiency. (Opp. at 11.) But, "the fact that an abstract idea may have beneficial uses does not mean that claims embodying the abstract idea are rendered patent eligible." *In re Mohapatra*, 842 F. App'x 635, 638 (Fed. Cir. 2021). These benefits flow directly from performing the abstract idea with well-known computer functionality: unbounded methods of encryption. *See, e.g.*, *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018) ("These benefits, however, are not improvements to database functionality. Instead, they are benefits that flow from performing an abstract idea in conjunction with a well-known database structure."). Nothing in the claims allows a computer to do something it could not do before. *Cf. Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1308 (Fed. Cir. 2018) (holding eligible claims construed to require "a new kind of file that enables a computer security system to do things it could not do before"). The claims simply encrypt data and then perform that encryption again, adding new data—the decryption method for the prior encryption. In other words, the claims cover the abstract idea of recursive encryption, not an improvement to technology.

Torus Ventures also takes issue with the claims' lack of specificity, arguing that claim 1 "provides specific steps for exactly how the 'recursive' security protocol is to be carried out." (Opp. at 11.) Not so. Claim 1 merely (1) encrypts a bitstream, (2) encrypts that first encrypted bitstream *with* its decryption algorithm, and (3) associates the second encryption with a second decryption algorithm. That is it. The claims are silent as to any specific method of how the bitstreams are encrypted, how the data may be decrypted, or how the encrypted data is associated with its decryption algorithm. This lack of specificity is intentional and boasted in the specification:

> [T]he protocol makes no distinction between types of digital data, whether the data be media streams to be protected, the executable code required to play those streams, the encrypted executable code required to play those streams, the executable code required to decrypt the encrypted code required to play those streams, the keys to be used along with the decryption code, etc., etc.

'844 Patent at 4:21-27. The specification continues that its invention "may utilize a variety of encryption techniques" (2:54-56), can be used with "any bit stream whatsoever" (4:49-54), and "is not hardware specific" (5:47-50). This unbounded scope allows the invention to "support a number of business models, including Time-limited Rental, Pay-per-view, Multiple Versioning, Machine-dependent License Revocation and Permanent Transfer of Ownership from one user to another." *Id.* at 4:44- 48.

At bottom, while Torus Ventures attempts to dress up the asserted claims, nothing in Torus Ventures' Response changes the abstract nature of the asserted claims.

    **C.**    <u>*Alice* Step Two:</u> **The asserted claims contain no inventive concept.**

Because the claims of the asserted claims are directed to an abstract idea, the Court must next determine whether they contain an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. at 222 (internal quotations omitted). To pass this test, the claims "must include additional features"

6

that "must be more than well-understood, routine, conventional activity." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (quotation omitted). Here, the claims are broadly generic and do not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

Torus Ventures' contention that the claim limitations provide an inventive security "architecture" is unavailing. (Opp. at 12-13.) Again, this "inventive" security architecture is nothing more than encrypting additional data—the first decryption algorithm. Encrypting additional data, however, is not inventive. Unlike the *Amdocs* case cited by Torus Ventures, the asserted claims do not "combine" generic components in an "unconventional manner" to solve a "particular technological problem." *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-02 (Fed. Cir. 2016).

Torus Ventures does not even attempt to argue that the claims of the '844 Patent include any non-conventional hardware or software. Nor could it. The specification concedes that the claimed "bit stream" can "be reduced to *a stream of 1's and 0's* . . . ." *Id.* at 2:31–34 (emphasis added). The specification also explains that the claimed encryption "*may utilize a variety of encryption techniques* to better protect digital content . . . ." *Id.* at 2:54–56 (emphasis added). Additionally, the methods . . . *can be implemented in an otherwise general purpose computing system* . . . ." *Id.* at 5:35-38 (emphasis added). Finally, "an encrypted version of the temporary key list data structure can be safely written out to memory (or stored in some other, more permanent location, such as *on-board NVRAM, Flash ROM or even out to a backup file on some hard disk* 750." *Id.* at 21:39–43 (emphasis added). In essence, the '844 Patent takes the abstract idea—recursive encryption—and applies it using generic computer components and conventional methods.

7

All of the components are generic, and the mere combination of them do not provide any concrete improvement to computer technology under the *Alice* step two analysis. The '844 Patent claims thus fail *Alice* step two because they do not recite an inventive concept.

## II.   THERE ARE NO CLAIM CONSTRUCTION DISPUTES PREVENTING A RULING AT THE RULE 12 STAGE

Despite asserting in the parties' Joint Position Statement Regarding Section 101 Claim Construction that "claim construction is necessary" before "resolution of any Section 101 issues will be ripe," Torus Ventures is silent on the issue of claim construction in its Response. (*Compare* Dkt. No. 47 *with* Opp.) This silence makes sense because there is no construction that would save the claims from their ineligibility.

## III.   THERE ARE NO FACTUAL DISPUTES PREVENTING A RULING AT THE RULE 12 STAGE

Neither is there a factual dispute that prevents dismissal under Rule 12(b)(6). Torus Ventures attempts to manufacture factual disputes, arguing that "resolving the issue of subject matter eligibility would, at a minimum, require a factual record addressing whether 'multilevel encryption,' 'encrypting data that has already been encrypted,' and encrypting the means of decryption were somehow 'well-understood, routine and conventional" at the time of invention. (Opp. at 14.) This argument misses the mark because Torus Ventures seeks to determine whether the abstract idea itself was well-understood, routine and conventional. But, "even accepting [Torus Ventures'] view that these particular uses are not well -known, routine, or conventional, '[a] claim for a *new* abstract idea is still an abstract idea.'" *PersonalWeb Techs. LLC. v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021) (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018)). "The claims here are ineligible because their innovation is an innovation in ineligible subject matter." *SAP*, 898 F.3d at 1163. When faced with the question—"[w]hat else is there in the claims before us?"—the answer is clear: "not much." *PersonalWeb*, 8 F.4th at 1319 (quoting

8

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012). The Court should not countenance Torus Ventures' efforts to delay resolution of the Section 101 inquiry.

### IV.     LEAVE TO AMEND SHOULD BE DENIED

Torus Ventures finally requests leave to amend its complaint as one last attempt to save its claims. Torus Ventures already amended its complaint in response to Defendant's initial Section 101 motion. (*See* Dkt. No. 50). Even so, Torus Ventures' request should be denied because it does not identify any amendment it could make to save its claim—and for good reason. No amendment could change the fact that the claims of the '844 Patent are invalid because they are directed to an abstract idea and do not contain an inventive concept. Thus, any amended complaint would still fail to state a claim upon which relief could be granted and amendment would be futile.

### V.      CONCLUSION

For the reasons above, Defendant requests that the Court grant its motion and dismiss Torus Ventures' First Amended Complaint. Because leave to amend would be futile, Defendant requests dismissal with prejudice.

Dated: April 14, 2025

Respectfully submitted,

*/s/ Lance E. Wyatt*
J. Brian Vanderwoude
Texas Bar No. 24047558
**DORSEY & WHITNEY, LLP**
200 Crescent Court, Suite 1600
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile
vanderwoude.brian@dorsey.com

Neil J. McNabnay
Texas Bar No. 24002583
mcnabnay@fr.com
Lance E. Wyatt
Texas Bar No. 24093397
wyatt@fr.com
Riley J. Green
Texas Bar No. 24131352
rgreen@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 – Telephone
(214) 747-2091 – Facsimile

**COUNSEL FOR DEFENDANT DALLAS CAPITAL BANK, N.A.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 14, 2025, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Lance E. Wyatt*
Lance E. Wyatt

Dated: April 14, 2025

Respectfully submitted,

*/s/ Lance E. Wyatt*
J. Brian Vanderwoude
Texas Bar No. 24047558
**DORSEY & WHITNEY, LLP**
200 Crescent Court, Suite 1600
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile
vanderwoude.brian@dorsey.com

Neil J. McNabnay
Texas Bar No. 24002583
mcnabnay@fr.com
Lance E. Wyatt
Texas Bar No. 24093397
wyatt@fr.com
Riley J. Green
Texas Bar No. 24131352
rgreen@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 – Telephone
(214) 747-2091 – Facsimile

**COUNSEL FOR DEFENDANT DALLAS CAPITAL BANK, N.A.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 14, 2025, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Lance E. Wyatt*
Lance E. Wyatt