## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| TORUS VENTURES LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:24-CV-00552-JRG |
| CAWLEY PARTNERS, LLC, | § | (LEAD CASE) |
| *Defendant.* | § | |

| | | |
|---|---|---|
| TORUS VENTURES LLC, | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO.  2:24-CV-00570-JRG |
| v. | § | (MEMBER CASE) |
| DALLAS CAPITAL BANK, N.A., | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (the "Motion") filed by Defendant Dallas Capital Bank, N.A. ("Dallas Capital"). (Dkt. No. 51.) In the Motion, Dallas Capital asks the Court to dismiss Plaintiff Torus Ventures LLC's ("Torus Ventures") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the asserted patent is directed to an abstract idea and does not include an inventive concept beyond that idea, making it ineligible for patentability under 35 U.S.C. § 101. (*Id.* at 1-2.)  Having considered the Motion, the related briefing, and the relevant authority, the Court finds that the Motion should be and hereby is **GRANTED**.

## I.    BACKGROUND

On July 22, 2024, Torus Ventures filed suit against Dallas Capital, alleging that Dallas Capital infringes U.S. Patent No. 7,203,844 (the "'844 Patent"). (Member Case No. 2:24-cv-570-JRG, Dkt. No. 1). The '844 Patent, which is entitled "Method and System for a Recursive Security Protocol for Digital Copyright Control," relates "in general to the protection of digital content, and more particularly, to the protection of digital data through the use of encryption." ('844 Patent, Dkt. No. 1-1, at Cover Page, col. 1:16-18.)

On March 14, 2025, Torus Ventures filed its First Amended Complaint (the "FAC"). (Dkt. No. 50.) Dallas Capital filed the instant Motion to Dismiss on March 17, 2025, asking the Court to dismiss Torus Ventures' FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 51.)  Torus Ventures filed its Response on April 7, 2025. (Dkt. No. 56.)  Dallas Capital filed its Reply on April 14, 2025. (Dkt. No. 59.)  Though available to it, Torus Ventures did not file a sur-reply. On May 29, 2025, the Court held a hearing on the Motion at which time the Court heard the parties' competing arguments on the Motion. (Dkt. No. 73.)

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court can dismiss a complaint that fails to state a claim upon which relief can be granted. To survive dismissal at this early stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pled facts as true and views all facts in the light most favorable to the plaintiff, but the Court is not required to accept the plaintiff's legal conclusions as true. *Id.*

The Court must limit its review "to the contents of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). However, documents attached to a defendant's motion to dismiss are considered a part of the pleadings if they are referred to in the complaint and are central to the claim. *Id.*

### B. Patent Eligibility

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. Since patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216–17 (2014). The Supreme Court instructs courts to distinguish between claims that set forth patent-ineligible subject matter and those that "integrate the building blocks into something more." *Id*.

The Court determines whether patent claims cover ineligible subject matter using a two-step analytical framework set out by the Supreme Court in *Alice*. 573 U.S. 208. At the first step, the Court evaluates whether the claims are directed to ineligible subject matter, such as an abstract idea. *Id*. at 217. To do so, the Court looks to the claims' "character as a whole." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Although all claims embody abstract ideas and other ineligible subject matter at some level, the Court's task is to examine whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).

If the challenged claim recites a patent-ineligible concept, step two requires the Court to evaluate whether there is "an 'inventive concept'—*i.e.,* an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (quotation marks cleaned up). This step is satisfied when the claim limitations "involve more than performance of 'well-understood,

3

routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 225). The Federal Circuit has explained that "[w]hile the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). Therefore, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Accordingly, "factual disputes about whether an aspect of the claims is inventive may preclude dismissal at the pleadings stage under § 101." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019). However, "[a]ny allegation about inventiveness, wholly divorced from the claims or the specification" does not defeat a motion to dismiss; only "plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (quoting *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019).

## III. DISCUSSION

### A. Claim Construction is Not Necessary.

The Court finds that claim construction is not necessary for the determination of patent eligibility in this case. Notably, Torus Ventures failed to respond to this issue in its responsive brief after Dallas Capital argued that there are no claim construction issues preventing the Court from ruling at the Rule 12 stage. (*Compare* Dkt. No. 51 at 15, *with* Dkt. 56.) Further, when asked about this by the Court, Torus Ventures would only say that claim construction "may be helpful." (*See* Dkt. No. 73 at 18:23-20:17.) However, Torus Ventures stopped short of saying claim

construction was necessary. (*Id.*; *see also Torus Ventures LLC v. Brinker International, Inc.* Case No. 2:25-cv-102, Dkt. Nos. 102 at 11; 107 at 21; 108 at 24 (agreeing in response to multiple motions to dismiss raised under § 101 that "claim construction is not needed to inform the Court's analysis as to patentability.") Accordingly, the Court finds that it is appropriate to proceed with the determination of patent eligibility at this stage.[1]

**B. No Dispute that Claim 1 is Representative.**

Dallas Capital contends that Claim 1 of the '844 Patent is representative of all claims of the '844 Patent for the § 101 analysis. (Dkt. No. 51 at 6.) Since Torus Ventures does not dispute that Claim 1 is representative, the Court will treat Claim 1 as representative for purposes of the § 101 analysis. (*See* Dkt. No. 73 at 17:13-15 ("[Court:] Do you dispute that claim 1 is representative of what's at issue? [Counsel for Torus Ventures:] No. No, I'm not disputing that here.").)

**C. Whether Claim 1 of the '844 Patent Is Eligible for Patent Protection**

Claim 1 of the '844 Patent recites:

A method for a recursive security protocol for protecting digital content, comprising:
　　encrypting a bitstream with a first encryption algorithm;
　　associating a first decryption algorithm with the encrypted bit stream;
　　encrypting both the encrypted bit stream and the first decryption algorithm with a
　　　　second encryption algorithm to yield a second bit stream;
　　associating a second decryption algorithm with the second bit stream.

---

[1] The Court further notes that although Torus Ventures did make the conclusory assertion in the parties' Joint Position Statement Regarding Section 101 Claim Construction that claim construction was necessary for the terms "recursive security protocol," "bitstream," "decryption algorithm" and "associating," Torus Ventures did not proffer any proposed constructions nor any explanation for why claim construction is necessary for these terms. (*See* Dkt. Nos. 47; 56.) Torus Ventures has failed to meet the minimum standard required at this stage to persuade the Court that it needs to delay a decision on the Motion until claim construction is completed. *See, e.g.*, *CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 715 (D. Del. 2012) (holding that claim construction was not required before undertaking a § 101 analysis where plaintiff "did argue that claim construction should occur prior to a § 101 analysis" but "plaintiff did not explain how claim construction might alter such analysis"), *aff'd sub nom. Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988 (Fed. Cir. 2014).

The Court begins by determining whether Claim 1 is directed to an abstract idea. *See Alice*, 573 U.S. at 217; *see also United Servs. Auto. Ass'n v. PNC Bank N.A.*, 2025 WL 1659297, at *4 (Fed. Cir. June 12, 2025).

### 1. *Alice* Step 1

To determine what Claim 1 is "directed to," the Court looks at the language of the claim considered in light of the specification and inquires as to "what the patent asserts to be the 'focus of the claimed advance over the prior art.'" *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (citing *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)). This step of the analysis "depends on an accurate characterization of what the claims require and of what the patent asserts to be the claimed advance." *Id.* at 1294.

Dallas Capital contends that Claim 1 is directed to an abstract concept of nothing more than the longstanding, routine, and conventional concept of "encrypting data that has already been encrypted" or "encrypting data multiple times." (Dkt. No. 51 at 8.) Specifically, Dallas Capital contends that Claim 1 describes the most generic functional steps of a standard computer—*i.e.*, protecting, encrypting, and associating data—which make it an abstract idea devoid of a "concrete or tangible form" such that it is not patent eligible. (*Id.* at 9 (citing *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014)).)

Torus Ventures responds that these characterizations impermissibly oversimplify the claims. (Dkt. No. 56 at 8.) Torus Ventures states, instead, that the claims are more accurately characterized as a "specific implementation of a recursive security protocol that provides multiple, nested layers of content protection in an [sic] inventive and unconventional way." (*Id.*) Torus Ventures notes that this "recursive security protocol" distinguishes it from a generic multilevel encryption scheme. (*Id.* at 9.) Torus Ventures further states that because Claim 1 specifically

requires "encrypting both the encrypted bit stream and the first decryption algorithm with a second encryption algorithm," it is not "merely applying a second layer of encryption to already-encrypted data." (*Id.*) Rather, Torus Ventures contends that "encrypting the means of decryption itself along with the data" creates "an inventive and fundamentally different security architecture as compared to conventional multilevel encryption." (*Id.*)

Dallas Capital responds that recursive security protocols are "encrypting data that has already been encrypted" and "multilevel encryption." (Dkt. No. 59 at 3.) Dallas Capital argues that while Torus Ventures claims that it also encrypts the means of decrypting the first encryption, this too is "abstract" because "it is simply encrypting additional data." (*Id.* (citing '844 Patent at col. 4:35-39 ("The 'older' security system is 'subsumed' as a part of the newer security system (i.e., you never have to strip the old protection 'wrapper' away in order to add a new, potentially more secure, level of protection to the entire system).").) Dallas Capital contends that this idea—*i.e.*, recursive encryption—is all that is claimed by the '844 Patent. (*Id.* at 4.)

The Court agrees with Dallas Capital that Claim 1 describes "multilevel encryption," "encrypting data that has already been encrypted," or "encrypting data multiple times."[2] Here, Claim 1 recites a "method for a recursive security protocol" that "encrypt[s] a bitstream with a first encryption algorithm," "associate[es] a first decryption algorithm with [that] encrypted bit stream," "encrypt[s] both the [first] encrypted bit stream and the first decryption algorithm with a second encryption algorithm to yield a second bit stream," and "associat[es] a second decryption algorithm with the second bit stream." ('844 Patent, cl. 1.) The Court finds it proper to characterize Claim 1 as "encrypting data that has already been encrypted." The Court also finds it proper to

---

[2] Notably, Torus Ventures describes Claim 1 this way in its Response. (*See* Dkt. No. 56 at 10 ("Similarly, although Claim 1 of the '844 Patent involves *encrypting already-encrypted data*, this does not negate the conclusion that the patent is aimed at solving the specific technological problem of creating a uniform, updatable security system for all types of digital content.") (emphasis added).)

characterize Claim 1 as "encrypting a bit stream of data that has already been encrypted and associated with its decryption algorithm." *See Internet Pats. Corp. v. Active Network, Inc.,* 790 F.3d 1343, 1348 (Fed. Cir. 2015) (explaining that courts "start by ascertaining the *basic* character of the subject matter") (emphasis added).

Torus Ventures relies on *TecSec, Inc. v. Adobe Inc.* for the proposition that "multilevel security" or "multilevel encryption" are not necessarily abstract ideas. (Dkt. No. 56 at 8 (citing 978 F.3d 1278, 1292-96 (Fed. Cir. 2020).)  In *TecSec*, however, the claims recited more than "multilevel encryption." 978 F.3d at 1295 (finding that the claim "expressly require[d] . . . 'accessing an 'object-oriented key manager'"). That is not the case here. In other words, what saved the claim in *TecSec* does not apply here.

Dallas Capital further contends that other cases are factually similar to the present case and confirm that the '844 Patent is directed to an abstract idea. (Dkt. No. 51 at 10-11 (citing *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1351-53 (Fed. Cir. 2021); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 531-34 (Fed. Cir. 2020).)  In *Universal Secure Registry*, for example, the Federal Circuit noted that the asserted patent, whose claims were directed to an electronic ID device that generated encrypted authentication information, contained no description of a "specific technical solution" by which the "secret information" was generated. 10 F.4th at 1352. Instead, the Court found that the claims were "merely a collection of conventional data combined in a conventional way that achieves only expected results." *Id.*

Also, the Federal Circuit in *Dropbox* agreed that the claims—which generally related to "data security" and specifically to "providing only as much authentication and encryption security as is required for a given user"—were directed to an abstract idea because they "offer[ed] nothing but a functional abstraction," as opposed to a "specific technique." 815 F. App'x at 531-33.  Dallas

Capital contends that Claim 1 of the '844 Patent likewise fails to "identify any specific improvement to computer functionality." (Dkt. No. 51 at 11.) Torus Ventures responds that each of these cases are "inapposite as none involved encrypting the means of decryption itself." (Dkt. No. 56 at 11.)  The Court finds Torus Ventures' response unavailing.

Like the asserted claims in *Universal Security Registry* and *Dropbox*, Claim 1 of the '844 Patent contains only functional abstraction, not a description of any "specific technical solution" by which the recursive encryption occurs.[3]   The claim at issue here recites "protecting," "encrypting," and "associating" using an "algorithm," all of which are data manipulation concepts similar to those courts have determined were abstract concept. *See, e.g.*, *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (noting that steps such as collecting, recognizing, storing, entering, manipulating data are abstract concepts); *see also AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024) ("We have explained that the steps of obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts."). The use of this result-based functional language simply describes the desired result of Claim 1 at a high level of generality and in an abstract way. This is insufficient. *See, e.g.*, *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("The claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way."). The claims do not, for example, provide any specific method of how the bit streams are encrypted or how the encrypted data is associated with its decryption algorithm. (*See* '844 Patent, cl. 1.)

---

[3] Though Torus Ventures claims that Claim 1 "provides specific steps for exactly how the 'recursive' security protocol is to be carried out," the Court finds that Torus Ventures has not identified or explained these specific steps and has not shown how the security protocol is to be implemented. (*See* Dkt. No. 56 at 11.)

Additionally, Dallas Capital correctly notes that the specification provides that the recursive security protocol is "useable for any digital content" and "makes no distinction between types of digital data." ('844 Patent, col. 4:13-22.)  Instead, "[t]he digital nature of these data is all that is important to the protocol." (*Id.* at 4:27-29.)  As Dallas Capital points out, this "unbounded scope allows the invention to 'support a number of business models, including Time-limited Rental, Pay-per-view, Multiple Versioning, Machine-dependent License Revocation and Permanent Transfer of Ownership from one user to another.'" (Dkt. No. 59 at 6 (citing '844 Patent, col. 4:44-48).) The specification also states that these protocols "may utilize a variety of encryption techniques," including "industry standard security technologies and other types of security standards," that can be used with "any bit stream whatsoever, including text, video and audio data, source and object code, etc.," and also that this "data structure is not hardware specific." (*Id.* at 2:43-44; 2:54-56; 4:52-54; 5:47-50.)

Ultimately, the Court is persuaded that Claim 1 only encrypts data and then performs encryption again, encrypting new data—*i.e.*, the decryption method for the prior encryption. The Court finds that Claim 1 covers the abstract idea of "encrypting data that has already been encrypted" or "encrypting a bit stream of data that has already been encrypted and associated with its decryption algorithm."[4]

---

[4] Existing precedent from other districts confirms for the Court that Claim 1 is directed to an abstract concept. In *Checksum Ventures, LLC v. Dell Inc.*, for example, the district court found that a dependent claim "discuss[ing] encryption," was directed to an abstract idea because it "provided no specifics," "contemplate[d] the use of "any one of several conventional approaches," and "merely recited generalized steps to be performed on a computer using conventional computer activity." 412 F. Supp. 3d 906, 915, 919 (N.D. Ill. 2019) ("Merely saying, 'encrypt it' is just an application of the abstract idea of encryption itself and is therefore patent ineligible."). Likewise, in *Bridge & Post, Inc. v. Verizon Communications, Inc.*, the district court found that the concepts of "tagging, tracking, and encrypting are abstract ideas at *Alice* step one" because the claims at issue provided only "generic descriptions of their steps without any 'special rules or details of the computers.'" 319 F. Supp. 3d 818, 827 (E.D. Va. 2018) (citing *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017)); *see also W. Digital Techs., Inc. v. Viasat, Inc.*, No. 22-CV-04376-HSG, 2023 WL 7739816, at *3 (N.D. Cal. Nov. 15, 2023) (finding claims directed to "the abstract idea of delivering and deriving a decryption key from a stream of data"). Here encrypting a bit stream of data that has already been encrypted and associated with its decryption algorithm, which fails to provide any specific technique for how the manipulation of the data is to be performed, is insufficient to render the claim non-abstract.

The Court's conclusion is further supported by the fact that the operative steps of the claim can be performed by a human with pen and paper. (*See, e.g.*, Dkt. No. 73 at 8:22-10:2 ("[E]ncrypting data and encrypting messages has been done for hundreds of years."); *see also CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (concluding that the claim's steps could be performed in the human mind, or by a human using a pen and paper).)

As noted and for the foregoing reasons, the Court finds that Claim 1 of the '844 is directed to the abstract idea of "encrypting data that has already been encrypted" or "encrypting a bit stream of data that has already been encrypted and associated with its decryption algorithm."

### 2. *Alice* Step 2

Having found that Claim 1 of the '844 Patent is directed to an abstract idea, the Court next considers the elements of Claim 1 individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent eligible application. *Alice*, 573 U.S. 208, 217–18.

Dallas Capital argues that Claim 1 lacks an inventive concept because it relies on widely-used conventional methods, the arranging of which does not amount to "significantly more" than the abstract idea itself. (Dkt. No. 51 at 12-13.) Dallas Capital explains that "encrypting data," "associating that encrypted data with a means for decryption," "encrypting that already encrypted data with the means for decryption," and "associating the new encryption with a means for decryption" are well-known, routine functions of a computer. (*Id.* at 13.) As support, Dallas Capital relies on several portions of the specification, which are discussed below. (*Id.* (citing e.g., '844 Patent, col. 2:31-34; 2:54-56; 5:35-38).) At its core, Dallas Capital's argument is that the '844 Patent takes the abstract idea of recursively encrypting data and applies it using generic

computer components and conventional methods, the arranging of which does not amount to significantly more than the abstract idea itself. (*Id.* at 13.)

Torus Ventures responds that the "recursive security protocol" claimed in the '844 Patent "provides a technological solution to specific problems in digital rights management that were not addressed by conventional security systems." (Dkt. No. 56 at 12.)  Torus Ventures alleges that the prior art systems and methods were "ineffective against sophisticated unauthorized access" because these conventional systems typically "relied on simple access control mechanisms that could be easily bypassed." (*Id.* (citing FAC, Dkt. No. 50 at ¶ 10).)  Torus Ventures further alleges that these conventional solutions had "several technological deficiencies," including attempting to make "distinctions between the various types of bit streams to be protected" rather than treating all digital data uniformly and "controlling the ability to access a particular data set" rather than "controlling the act of expressing the ideas contained within the data set." (*Id.* (citing FAC, Dkt. No. 50 at ¶¶ 11-12 (citing '844 Patent, col. 28:59-64)).)

Torus Ventures then alleges that the '844 Patent claims implement "recursive security protocols that provide multiple, nested layers of content protection." (*Id.* (citing Dkt. No. 50 at ¶¶ 14, 16).)  Torus Ventures goes on to say that this "recursive approach to digital rights management" represents "an architectural advancement in computer security technology" that "was not previously available in conventional systems." (*Id.* at 12-13 (citing FAC, Dkt. No. 50 at ¶ 15).) Torus Ventures maintains this "architecture" is an unconventional inventive concept whose "steps require the inventive and unconventional 'recursive' security protocol." (*Id.* at 13 (citing FAC, Dkt. No. 50 at ¶¶ 15, 21).)

Torus Ventures relies on *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, for the proposition that the Federal Circuit has found a "distributed architecture" to be an inventive concept. 841 F.3d

12

1288, 1301-02 (Fed. Cir. 2016). In that case, the Federal Circuit held that the claims of the '065 patent were eligible under step two because they contained a sufficient inventive concept through "the use of distributed architecture," which depended upon a "specific enhancing limitation" that provided the "requisite 'something more' than the performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Id.* 1301-02. Torus Ventures argues that the '844 Patent claims a method employing an inventive security "architecture" that "encrypts the means of decryption itself, providing multiple, nested layers of content protection." (Dkt. No. 56 at 13.)

Dallas Capital responds that the alleged "architecture" is not inventive because it is nothing more than encrypting additional data. (Dkt. No. 59 at 7.) Unlike the claim in *Amdocs*, it argues that Claim 1 of the '844 Patent does not combine generic components in an "unconventional manner" to solve a particular technological problem. (*Id.* (citing *Amdocs*, 841 F.3d at 1300-02 (Fed. Cir. 2016).) Rather, Dallas Capital says that Claim 1 applies the abstract idea of encrypting already encrypted data using generic computer components and conventional methods. (Dkt. No. 59 at 7.) Specifically, Dallas Capital asserts that Claim 1 describes (1) encrypting data, (2) associating that data with a means for decryption, (3) encrypting that already encrypted data, and (4) associating the new encryption with a means for decryption, all of which are well-known, routine functions of a computer that are applied using generic computer components. (Dkt. No. 51 at 13.)

Dallas Capital contends that the specification of the '844 Patent makes this clear. (*Id.*) It argues that the specification admits that the claimed encryption security protocols "may utilize industry standard security technologies and other types of security standards" and "may themselves be expressed in terms of a digital bitstream," which the specification admits that such

"bit stream" can be "reduced to a stream of 1's and 0's." (*Id.* (citing '844 Patent, col. 2:31-34, 2:43-46).)  It also represents that the specification explains that the "encrypted version of the temporary key list data structure can be safely written out to memory (or stored in some other, more permanent location, such as [generic computer parts known as] on-board NVRAM, Flash ROM or even out to a backup file on some hard disk." (*Id.* citing '844 Patent, col. 21:39-43).)

Torus Ventures argues that even if the '844 Patent involves generic hardware and software, the Federal Circuit has recognized that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). The inventive concept here, Torus Ventures claims, is the "architectural" advancement of recursive security protocol wherein the means of decryption are also encrypted. (Dkt. No. 56 at 14.)  Torus Ventures reiterated this at the hearing, directed the Court to paragraph seventeen of its FAC, and argued that "the inventive aspect that's not been done before [is] where the encrypted bit key and its decryption key are both together in another nested layer of security encryption." (Dkt. No. 73 at 23:12-24.)

The Court finds, however, that Torus Ventures points to nothing showing that the combination of these conventional computer functions achieves more than what would be expected from multiple layers of encryption. *See Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1353 (Fed. Cir. 2021) ("There is nothing in the specification suggesting, or any other factual basis for a plausible inference (as needed to avoid dismissal), that the claimed combination of these conventional authentication techniques achieves more than the expected sum of the security provided by each technique."); *United Servs. Auto. Ass'n*, 2025 WL 1659297, at *4 ("Our precedent is clear that computer-mediated implementation of routine or conventional activity is not enough to provide an inventive concept.")  The Court further finds that the combination of

these conventional methods yields nothing more than the expected results of increased content protection. *See Universal Secure Registry LLC*, 10 F.4th at 1353 (finding that the claims failed to recite an inventive concept that would transform the abstract idea into patentable subject matter where "the combination of these long-standing conventional methods of authentication yields expected results of an additive increase in security.").

For the reasons explained herein, the Court finds that the limitations of Claim 1, either individually or as an ordered combination, do not "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347–48 (quoting *Alice*, 573 U.S. at 225). Instead, the Court finds that the '844 Patent takes the abstract idea of "encrypting data that has already been encrypted" or "encrypting a bit stream of data that has already been encrypted and associated with its decryption algorithm" and applies it without any specificity using generic computer components and conventional methods, the arranging of which does not amount to "significantly more" than the abstract idea itself. *See Alice*, 573 U.S. at 218. Though Torus Ventures claims that the inventive concept is an "architectural" advancement, the Court finds that this is simply the abstract idea of "encrypting data that has already been encrypted," which does not amount to "significantly more" than the abstract idea itself. *See Alice*, 573 U.S. at 217-18 (requiring the element or combination of elements to amount to "significantly more" than a patent on the ineligible concept itself). Repeating an abstract step (such as encrypting already encrypted data) does not, by that repetition alone, amount to something inventive. That is what we have here.

The specification further makes clear that Claim 1 applies this abstract idea using only generic computer parts and conventional methods, which the specification also concedes were well-known practices at the time of the invention. For example, the specification provides that the

claimed encryption security protocols "may utilize industry standard security technologies and other types of security standards" and "may themselves be expressed in terms of a digital bitstream," which the specification also admits that such "bit stream" can be "reduced to a stream of 1's and 0's"—i.e., the well-known, quintessential conventional building blocks of software. ('844 Patent, col. 2:31-34, 2:41-46).) The specification goes on to say that that the claimed encryption "may utilize a variety of encryption techniques" using "publicly known algorithms." (*Id.* at col. 2:54-56, 28:7.) The specification also admits that not only can these protocols "be implemented in an otherwise general purpose computing system" and are "not hardware specific," but also that "the hardware should ideally be sufficiently general purpose to support a large variety of one-way hashing functions" and that "it is assumed that the actual hardware is general-purpose enough to be used in a non-algorithmically specific manner." ( '844 Patent, cols. 5:35-38; 5:47-50; 7:35-42; 12:55-57).) Further, the specification admits that "[s]ince the security protocol described herein is based on publicly known algorithms," the security protocol could "be accomplished by any general purpose computing device, given that it has enough time to complete the computation." ('844 Patent, col. 28:6-10.) Finally, the Court notes that the specification expresses that the claimed encryption method may be performed in an unbounded range of mediums such that it is not limited to any specific technological improvement. (*Id.* at 4:49-54.)

While the question of "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field" is a question of fact, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018), it is also true that "the patent in suit [may] prove[] its own invalidity." *Univ. Of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 930 (Fed. Cir. 2004). The Court concludes that such is the case here.[5]

---

[5] As the specification becomes broader and broader, in so doing it weakens and dilutes any claim that the process it describes is somehow unique, unconventional, or unknown.

**D.  There are No Factual Issues Preventing Resolution of this Motion at this Stage.**

Torus Ventures argues for the existence of factual issues that make Dallas Capital's Motion premature and requires the Court to deny the Motion on that basis alone. (Dkt. No. 56 at 7.) Specifically, Torus Ventures contends that Dallas Capital's Motion raises one overarching factual dispute: "whether 'multilevel encryption," "encrypting data that has already been encrypted," and "encrypting the means of decryption" were somehow 'well-understood, routine and conventional' at the time of the invention." (*Id.*)

Dallas Capital responds that not only does Torus Ventures' argument attempt to manufacture factual disputes, but that Torus Ventures' position fails because even accepting Torus Ventures' view that these particular uses are not well-known, routine, or conventional, a "claim for a *new* abstract idea is still an abstract idea." (Dkt. No. 59 at 8 (citing *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021) ("[T]he purported improvements that PersonalWeb sets forth just restate the abstract ideas discussed above. . . . And even accepting PersonalWeb's view that these particular uses are not well-known, routine, or conventional, '[a] claim for a new abstract idea is still an abstract idea.'").)  Importantly, Dallas Capital argues that Torus Ventures has failed to explain how any fact issue would impact the Section 101 analysis. (*Id.* at 1 (citing *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360–61 (Fed. Cir. 2023) ("[T]he patentee must propose a specific claim construction or identify specific facts that need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes.").)

Ultimately, the Court agrees with Dallas Capital on this point.  Torus Ventures raises one— and only one—factual dispute in its Response to support its position that disposition at this stage is premature. (*See* Dkt. No. 56 at 7.)  However, as a preliminary matter, Torus Ventures has not

17

met its burden of sufficiently explaining why this must be resolved before the Court can act on this Motion. *See Trinity Info Media, LLC*, 72 F.4th at 1360–61. Torus Ventures has provided no explanation or proposed expert declaration that would change this analysis. *See e.g., Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) ("Cleveland Clinic provided no proposed construction of any terms or proposed expert testimony that would change the § 101 analysis.").

The asserted factual issue which Torus Ventures raises is merely a restatement of its abstract ideas. The "inventive concept" element of the section 101 analysis requires "significantly more" than the abstract idea itself. *See First-Class Monitoring, LLC v. United Parcel Serv. of Am., Inc.*, 389 F. Supp. 3d 456, 471 (E.D. Tex. 2019) (Bryson, J., sitting by designation) ("That is, the assertedly 'inventive concept' is the abstract idea itself. As noted, however, the 'inventive concept' element of the section 101 analysis requires 'significantly more' than the abstract idea itself."). Even if the Court were to accept Torus Ventures' view that these particular ideas are not well-known, routine, or conventional, the Court would still be compelled to find that a "claim for a *new* abstract idea is still an abstract idea." *See PersonalWeb Techs. LLC*, 8 F.4th at 1318; *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 534 (Fed. Cir. 2020) ("[W]e have held that the abstract idea to which a claim is directed cannot supply the inventive concept, and, moreover, if a claim amounts to merely 'the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of the abstract idea.'"); *United Servs. Auto. Ass'n*, 2025 WL 1659297, at *4 ("The inventive concept requires more than mere application of the abstract idea . . . ."); *Optis Cellular Technology, LLC, et al. v. Apple Inc.*, 2025 WL 1680253, at *11 (Fed. Cir. June 16, 2025) ("[T]he abstract idea itself cannot supply the inventive concept, 'no matter how groundbreaking the advance.'").

The Court further notes that a plaintiff cannot avoid dismissal simply by contending that the invention at issue is novel and that the inventive concept somehow resides in the abstract idea itself. *First-Class Monitoring, LLC v. Ups of Am., Inc.*, 389 F. Supp. 3d 456, 471-72 (E.D. Tex. 2019) ("*Berkheimer* and *Aatrix* leave untouched the numerous cases from this court which have held claims ineligible because the only alleged 'inventive concept' is the abstract idea.").

Accordingly, it is appropriate for the Court to determine that the '844 Patent is ineligible under § 101 at this stage.[6] *See Cleveland Clinic Found.*, 859 F.3d at 1360 ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced.") (collecting cases.)

### E.  Leave to Amend is Not Warranted and Would be Futile.

Torus Ventures alternatively asks that the Court allow it leave to amend its FAC to add allegations supporting the '844 Patent's eligibility. (Dkt. No. 56 at 15-16.) It contends that amending would not be futile because it could add allegations showing that the claimed method uses an inventive and unconventional recursive security protocol and "architectural" advancement that addressed technical deficiencies. (*Id.* at 15.)  Torus Ventures also contends in its Response that leave to amend is appropriate given that it has not had the benefit of discussion with the Court. (*Id.* at 16.)  Dallas Capital Bank responds that leave should be denied because: (i) Torus Ventures has previously amended its Complaint once in response to Dallas Capital's initial Motion for Judgment on the Pleadings under § 101, (ii) Torus Ventures does not identify any amendment it could make to save its claim, and (iii) Torus Ventures cannot identify any amendment that could

---

[6] While this Court has, in other cases, properly found that a material factual dispute exists such that disposition at the Rule 12 stage is not supportable, such is not the case here. The Court has looked carefully and diligently at the arguments presented, against the prospect that a material issue of fact might exist here, but has not found anything that prevents the Court from disposing of the complete § 101 analysis at this time.

change the fact that Claim 1 is directed to an abstract idea and does not contain an inventive concept. (Dkt. No. 59 at 9.)

As a preliminary matter, the Court finds that Torus Ventures has already amended its Complaint once. (*Compare* Dkt. No. 1, *with* Dkt. No. 50.) Torus Ventures also did not proffer any specific proposed amendments supporting its request for leave to amend again. *See Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1215 (Fed. Cir. 2025) (finding no error with the district court's conclusion where "Recentive failed to propose any amendments or identify any factual issues that would alter the § 101 analysis"). Further, Torus Ventures claims that the Court should grant leave to amend because it has not had the benefit of discussion with the Court. (*Id.* at 16.)[7] Notably, Torus Ventures did not ask for leave to amend at the hearing. (*See generally* Dkt. No. 73 at 16:22-30:13.) Though Torus Ventures had opportunity to file a Sur-Reply on this Motion and proffer such a proposed amendment, it did not submit a sur-reply. Ultimately, at the hearing before the Court on May 29, 2025, Torus Ventures did not identify any proposed amendments that would support its claim that the '844 Patent contains an inventive concept. (*See generally* Dkt. No. 73 at 16:22-30:13.) In sum, the Court finds that granting Torus Ventures leave to amend is not justified or warranted.

## IV.    CONCLUSION

Dallas Capital's Motion to Dismiss (Dkt. No. 51) is **GRANTED** for the reasons stated herein. As a result, Claim 1 of the '844 Patent is held to be ineligible for patent protection. Torus Ventures' FAC is **DISMISSED WITH PREJUDICE**. In light of the above, the Clerk of Court is directed to **DECONSOLIDATE** this case from the Lead Case and, upon deconsolidation, this case is **ORDERED CLOSED**.

---

[7] If not having the benefit of "discussion with the Court" were a sufficient basis to obtain leave to amend, no hearing would ever be conclusive. Every respondent would urge such if only to gain another bite at the apple.

So **ORDERED and SIGNED this 30th day of June, 2025.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE